# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DARLENE ADAMS, | CASE NO. 5:07CV2436 |
| Plaintiff, | |
| v. | JUDGE JOHN R. ADAMS |
| CITY OF AKRON, | MEMORANDUM OF OPINION AND ORDER |
| Defendant. | [RESOLVING DOC. #34] |

This matter comes before the Court on Defendant City of Akron's Motion for Summary Judgment.  Plaintiff has not responded in opposition to Defendant's Motion.[1]  This Court has been advised, having reviewed the parties' pleadings, Defendant's motion and attached exhibits, and applicable law.  For the reasons that follow, this Court finds that Defendant's Motion for Summary Judgment is GRANTED.

## I. Statement of Facts

Plaintiff Darlene Adams ("Plaintiff") was originally hired in May 2004 as a temporary water maintenance worker for the City of Akron ("Defendant").  Defendant employs three types of employees: permanent, seasonal, and temporary.  Employees who perform the winter snow and ice removal are considered temporary employees, while the summer workers are considered seasonal workers.  Both the seasonal and temporary workers are routinely laid off at the end of

---

[1] Defendant filed its motion for summary judgment on February 11, 2008.  The Court had extended this filing date from the January 18, 2008, deadline originally set during the Case Management Conference on October 23, 2007, after Plaintiff's counsel withdrew from the case in January 2008.  The Court has waited over two months for Plaintiff's response, and, receiving none, now finds that the record for review in this case consists of Plaintiff's Amended Complaint, Defendant's Answer, and Defendant's Motion for Summary Judgment with attached affidavits and exhibits, as Plaintiff has filed nothing on the record beyond her Amended Answer for this Court's review.

the two seasons.  Pursuant to her temporary employment status, Plaintiff was laid off in February 2005.

She was then rehired in September 2005 by Defendant as a seasonal, semi-skilled laborer in the Highway Maintenance department.  Instead of being laid off at the end of the seasonal term, Plaintiff's employment status changed to temporary and she was permitted to work in snow and ice removal until March 2006.  After a short lay-off, she was re-hired in April 2006 as a seasonal, semi-skilled laborer in the Highway Maintenance department until she was laid off at the end of the seasonal term in November 2006.

On August 24, 2006, while working in the Highway Maintenance department, Plaintiff injured her left shoulder.  She immediately went to the Emergency Room and returned to work later that day with a doctor's slip, which required her to wear a sling on her left arm and restricted her to no overhead work, effectively limiting her to one-armed work.  Her immediate supervisor, Teresa Shepherd, who did not have the authority to make light duty assignments, discussed with her supervisor, Jeff Straus, the possibility of placing Plaintiff on light duty.

Light duty assignments are administered through Defendant's Employee Benefit Division.  While Defendant provides light duty assignments in an attempt to accommodate injured employees' restrictions, they are not guaranteed to every worker, and are dependent upon the employee's position and medical restrictions.  Once the Employee Benefit Division is notified of an injured employee's particular restrictions, Tracie D'Antonio, an analyst in the Employee Benefit Division, searches for a light duty assignment that accommodates those restrictions, a process that may take several days to complete.

Plaintiff did not work the rest of the day on August 24, 2006, the day she was injured, but she did receive compensation for that day.  She also did not work on August 25, 2006, because the process of finding a light duty assignment for her had just started.  Plaintiff then produced a revised doctor slip releasing her to full duty on August 28, 2006, at which time finding a light duty assignment became a moot point.  She filed a workers' compensation claim for a sprain of her left shoulder on August 24, 2006, which was allowed.  She received temporary total benefits ("TT") from the Ohio Bureau of Workers' Compensation for the period of August 25-27, 2006, which included a Saturday and a Sunday.  Notably, an injured employee receiving TT benefits is not permitted to work.

On Tuesday, October 31, 2006, D'Antonio received a fax copy of a medical slip from MedGroup notifying Defendant that Plaintiff had aggravated her original shoulder injury and was released to work with medical restrictions.  Prior to this, Plaintiff's supervisors, Straus and Shepherd, knew nothing of these restrictions or even of the fact that Plaintiff had reinjured her shoulder.  Based on this new medical slip, D'Antonio began a search for a light duty assignment that could accommodate Plaintiff's restrictions, which included no overhead work as well as lifting and carrying restrictions.  D'Antonio found a light duty assignment for Plaintiff, which she worked on November 3, 2006.  At the end of this day, Plaintiff was laid off pursuant to the seasonal employee policy, for which she had received notice on October 20, 2006.  She has not been rehired by Defendant.  Plaintiff again received TT benefits for November 1-2, 2006 and was not permitted to work on those days.

Starting on November 4, 2006, Plaintiff once again began to receive TT benefits.  Her TT benefits ended on October 7, 2007.  For the first twelve weeks of her TT benefits, Plaintiff

3

received $455.74 a week and after that period, she received $378.58 a week.  Plaintiff's TT benefits ended on October 7, 2007 and she began to receive another form of compensation called living maintenance benefits on October 8, 2007, and continues to receive that form of compensation today.  While receiving living maintenance benefits, Plaintiff participates in a BWC-approved rehabilitation program and is not permitted to work.  To date, Plaintiff has received $23,035.13 in TT benefits and $5,296.90 in living maintenance benefits.

## II.  Law and Analysis

### A.  Summary Judgment Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(c).  The burden of showing the absence of any "genuine issues" belongs to the moving party.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  *Id.* at 252.  A court must view the summary judgment motion "in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). *See also U.S. v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if the party who bears the burden of proof at trial does not establish an essential element of its case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence

4

on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  In most civil cases involving summary judgment, a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving] party is entitled to a verdict." *Anderson*, 477 U.S. at 252.

Ordinary, once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party, who may not simply rely on his pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  However, where, as here, a motion for summary judgment is unopposed, the district court must examine the motion to ensure that the moving party has discharged its initial burden of demonstrating the absence of a genuine issue of material fact.  *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 410 (6th Cir. 1992).  The court must intelligently and carefully review the legitimacy of the motion, considering the possibility of evidentiary misstatements by the moving party and keeping in mind the context in which the evidence arose. *Id.* at 407.  The Sixth Circuit has explained:

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."

*Id.* at 410.

Plaintiff has raised federal race and sex discrimination claims under Title VII of the Civil Rights Act of 19654, 42 U.S.C. § 2000e, as well as state race and sex discrimination claims

under Ohio Rev. Code §§ 4112.02(A) and 4112.99. When analyzing violations of R.C. §4112, Ohio courts generally apply federal case law interpreting Title VII of the Civil Rights Act. *See, e.g., Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm.*, 421 N.E.2d 128, 131-32 (Ohio 1981). To establish a prima facie case of sex or race discrimination under Title VII, a plaintiff must show: (1) that she is a member of a protected group; (2) that she was subjected to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

Under the McDonnell-Douglas burden-shifting framework, once a plaintiff has set forth a prima facie case, the defendant-employer bears the burden of production to put forth a legitimate, nondiscriminatory reason for the adverse treatment. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the defendant meets this burden, the plaintiff must then show that the defendant's reason was pretextual. *Id.* A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's alleged conduct, or (3) was insufficient to warrant the challenged conduct. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).

**B.     Prima Facie Case**

"An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182, quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.

6

1996). The Sixth Circuit Court of Appeals has found that "[e]xamples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004), citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

In her Amended Complaint, Plaintiff, a black female, alleges that she sought light duty work after her injury but was denied that work, and that white male employees were given light duty work in similar situations. However, there are absolutely no details of that alleged mistreatment, nor has Plaintiff since filed anything to support these vague claims. Therefore, although she is a member of two protected classes, Plaintiff has failed to make out a prima facie case of discrimination because she cannot demonstrate that she was subject to an adverse employment action or that there were similarly situated employees who were not members of those protected classes who were treated differently.

First, Plaintiff has not supported her claim that she was subject to an adverse employment action. It appears from the limited record in this case that Plaintiff did not work for three days because of her shoulder injury. First, she was unable to work on Friday, August 25, 2006, because of work restrictions after the initial shoulder injury. However, before Defendant could act to find her light duty, Plaintiff presented it with an unrestricted return-to-work slip on Monday, August 28, 2006, and returned to full duty that day.

Defendant's Employee Benefits Division was informed of Plaintiff's subsequent re-injury of her shoulder and attendant work restrictions without any prior warning or notice to her immediate supervisors. This was on October 31, 2006. However, Plaintiff had called in sick

with a stomach virus on October 30 and October 31, 2006, time for which no seasonal worker would have received compensation. Her first day back to work under these restrictions was November 1, 2006. Defendant began the process of finding Plaintiff light duty when it received notice, but could not identify such duty until November 3, 2006, the last day of employment for seasonal workers.

For one day, August 25, 2008, and for two additional days, from November 1 to November 2, 2006, Plaintiff was unable to work because she had not been assigned a light duty task. The Court does not find that this in any way constitutes a "materially adverse change in the terms or conditions of employment," particularly when Defendant has carefully set forth the process of finding an employee transitional or light-duty work, which it did not have time to do before Plaintiff returned to full duty in August or before her lay-off date in November.

Furthermore, Plaintiff has not identified any specific similarly-situated white male employees who were treated differently. In its motion for summary judgment, Defendant identified two white male employees who received a light-duty assignment after an injury, but has adequately explained that they were not similarly situated. Each of these employees suffered significantly different injuries: one had a knee strain and the other had serious back problems. These injuries required significantly different work restrictions. Most notably, one of these employees was not a seasonal worker, and therefore had different terms of employment. The other was not given approved and appropriate light duty until nearly a month after his injury, the time required by Defendant to follow its procedures for locating such work. For these reasons, the Court finds that Plaintiff has failed to satisfy her burden of setting forth a prima facie case of race or sex discrimination.

### C. Legitimate, Non-discriminatory Reason

Assuming, *arguendo*, that Plaintiff had established a prima facie case of discrimination, Defendant would then have to demonstrate that its actions with respect to Plaintiff were legitimate and non-discriminatory. *See McDonnell-Douglas*, 411 U.S. at 802. Defendant has explained that, not only did it not have time to find Plaintiff light duty for the three days she was unable to work because of her injury, but she would not have been permitted to work those days because she was receiving workers' compensation benefits. Defendant has satisfied its burden of setting forth legitimate, non-discriminatory reasons for its actions.

### III. CONCLUSION

The Court finds that Plaintiff has failed to demonstrate a prima facie case of race or sex discrimination under state or federal law because she could not identify an adverse employment action or favorable treatment of those not in a protected class. Furthermore, even if Plaintiff had satisfied her burden, Defendant has set forth legitimate, non-discriminatory reasons for its actions. Therefore, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

April 28, 2008     /s/ John R. Adams
Date     John R. Adams
     US District Judge